**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**BATESVILLE DIVISION**

**CHARMA L. BARNARD**                                                                                  **PLAINTIFF**

**V.**                            **CASE NO. 1:19-CV-00045-JTK**

**ANDREW SAUL,**
**Commissioner of Social Security Administration[1]**                      **DEFENDANT**

**ORDER**

**I.   Introduction:**

Plaintiff, Charma L. Barnard ("Barnard"), applied for disability benefits on April 12, 2017, alleging a disability onset date of January 1, 2009. (Tr. at 24). The claim was denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Barnard's application. (Tr. at 33). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Barnard has requested judicial review.

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

**II.   The Commissioner's Decision:**

The ALJ found that Barnard had not engaged in substantial gainful activity since the alleged onset date of January 1, 2009. (Tr. at 26). The ALJ found, at Step Two of the sequential five-step analysis, that Barnard had the following severe impairments: degenerative disc disease, asthma, depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

substance use disorder. *Id.*

At Step Three, the ALJ determined that Barnard's impairments did not meet or equal a listed impairment. (Tr. at 27). Before proceeding to Step Four, the ALJ determined that Barnard had the residual functional capacity ("RFC") to perform work at the light level, with additional limitations. (Tr. at 28). She must avoid exposure to airborne irritants, such as smoke, dust, or pollen. *Id.* She can understand, remember, and carry out simple job instructions. *Id.* She can make decisions in simple work-related situations. *Id*. She can respond appropriately to coworkers and supervisors when contact is occasional and incidental, and not necessary to performing work related duties. *Id*. She must avoid contact with the public. *Id*. She is able to respond appropriately to minor changes in the usual work routine. *Id*.

The ALJ found that Barnard was able to perform her past relevant work. (Tr. at 31). The ALJ made an alternative finding at Step Five. He relied on the testimony of a Vocational Expert ("VE") to find that, considering Barnard's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 33). Therefore, the ALJ found that Barnard was not disabled. *Id.*

### III.  Discussion:

    A.  Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only

evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B. Barnard's Arguments on Appeal

Barnard contends that substantial evidence does not support the ALJ's decision to deny benefits. Her only argument is that the ALJ should have found chronic headaches to be a severe impairment. The Court agrees.

Barnard consistently complained of chronic tension headaches. Her doctor in 2016 noted that she was the victim of repeated head trauma from an abusive partner, and had a traumatic brain injury as a result. (Tr. at 373-390). He prescribed five medications for headaches, some to be taken as frequently as every six hours, but most to be taken at least four times a week. *Id.* She began seeing APRN Beverly Clark in May 2017, who recorded regular complaints of headaches. (Tr. at (841). Barnard said that weather changes, bright lights, and noise aggravated her headaches. (Tr. at 655-656). She said she had headaches two to three times a week and they could last up to three days. (Tr. at 58). Glasses were prescribed, which helped initially, but in November 2017 her headaches persisted. (Tr. at 773).

Both state-agency reviewing physicians listed chronic headaches as a problem. (Tr. at 83, 96).

Nurse Clark filled out two medical source statements, specifically addressing headaches. (Tr. at 592-593, 655-666). In the first one, dated June 27, 2017, Nurse Clark said that headaches were diffuse over Barnard's entire head, and they occurred over once a week, lasting 2-3 days. (Tr.

at 592-593). She said they were accompanied by photopobia and phonophobia and were of a throbbing and pulsating nature. *Id*. Barnard had not required ER visits for headaches. But she took medications for her headaches and had some positive response. *Id*. However, Nurse Clark said that Barnard would miss 3-4 days a week of work due to headaches. *Id*.

The second form from Nurse Clark was filled out on November 21, 2017. (Tr. at 655-666). She said that Barnard had severe headaches with vertigo, nausea, mental confusion, and mood changes. *Id.* She said they occurred three times a week for 2-3 days. *Id.* Barnard said nothing alleviated her headaches. Nurse Clark noted that medication response was poor. *Id*. She said Barnard would not handle stress well and headaches would preclude work activity. *Id*.

The ALJ did not rule headaches to be a severe impairment. He did not discuss headache diagnosis or treatment in his opinion. He did not discuss the specific headache medical source statements from Nurse Clark. The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 456 F.3d 890, 894 (8th Cir. 2006). Barnard has presented enough evidence of headaches to meet the severe impairment requirement at step two, since her treating nurse said headaches would preclude work activity. Because it was not ruled severe, the ALJ did not discuss headaches, which means we cannot say whether he considered the impairment at all. This was clear error. Because all of the medical opinions included headaches as a diagnosis, and Nurse Clark stated that headaches would preclude work, they should have been considered properly at step two in accordance with administration regulations.

**IV.   Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by

substantial evidence. The ALJ should have found headaches to be severe impairment at step two.

The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 27th day of May, 2020.

_____
UNITED STATES MAGISTRATE JUDGE